*Robert T. Efurd, Jr.*, for appellants.
*Carol V. Clark*, for appellee.

## 70865. PRESIDENTIAL FINANCIAL CORPORATION v. TELE-WIRE SUPPLY CORPORATION.

### (337 SE2d 768)

SOGNIER, Judge.

Tele-Wire Supply Corporation brought suit against Presidential Financial Corporation alleging, in Count V, that Presidential acted with wanton negligence in failing to turn over funds due Tele-Wire under an agreement between the parties and converting those funds to Presidential's own use. Tele-Wire moved for partial summary judgment on Count V and on Presidential's counterclaim. The trial court sustained Tele-Wire's motion and Presidential appeals.

Appellee sold cable equipment to ITD (Industrial Tool Distributors, Inc.) which in turn sold the equipment to Cox (Cox Cable Communications, Inc.). Cox forwarded all payments for the equipment it purchased from ITD to appellant, sending a check or other remittance plus a voucher which contained the invoice number of the equipment for which the check was payment. Appellee and appellant entered into an agreement whereby appellant agreed to deposit all checks it received from Cox in payment of appellee's equipment in a special account ("collateral account") set up for that purpose. The agreement stated that appellant "understand[s] that all invoices bearing a number including the prefix 'TW' ('TW Invoices') represent receivables arising from sales by ITD to Cox of goods purchased from [appellee] and that all TW Invoices direct Cox to send all payments with respect thereto to a mailing address of [appellant's]. . . . In the event that any check or remittance is received in payment of an unspecified invoice, you and we agree to cooperate in determing [sic] to which receivable such payment relates." Appellant relied on the Cox voucher documentation rather than the invoices in determining the presence of TW prefix invoices and, seeing thereon no reference to invoices so designated, appellant directed all payments to ITD (save for certain invoices designated in payment to appellant under a separate agreement between ITD and appellant). Appellee brought suit against appellant claiming appellant had failed to properly deposit payments made by Cox on TW prefix invoices.

1. Appellant contends the trial court erred by granting partial summary judgment to appellee on Count V. The trial court held that

appellant was obligated under the agreement to turn over all monies for invoices prefixed with the TW designation to appellee and appellant's failure to so act and its conversion of those funds was in bold disregard of contractual obligations and constituted negligence. We agree with the trial court that no ambiguity existed in the agreement's requirement that appellant check the invoices to determine whether the invoices had the TW prefix. However, in Count V appellee is not seeking damages arising from the breach of the contract; rather, Count V sounds in tort as appellee seeks damages for appellant's alleged negligence in converting funds appellant received on appellee's behalf from Cox by directing those funds to ITD. "To state a cause of action for negligence, there must be a legally attributable causal connection between the defendant's conduct and the alleged injury. [Cits.]" *Rosinek v. Cox Enterprises*, 166 Ga. App. 699, 700 (305 SE2d 393) (1983). "Questions of negligence, contributory negligence, and proximate cause are ordinarily for the jury. [Cits.]" *Vizzini v. Blonder*, 165 Ga. App. 840, 841 (303 SE2d 38) (1983). The record here reveals that questions of fact exist whether appellant's failure to check the invoices was the proximate cause of appellee's injury. There was some evidence in the record that it was ITD's responsibility to place the TW prefix on the invoices representing appellee's equipment and that ITD had not sent any invoices with the TW prefix designation on them to Cox. Thus, a question of fact exists whether an inspection of the invoices as required by the agreement would have revealed any TW prefix invoices. Although appellee argues that the agreement required appellant to inquire into any checks received in payment of invoices without a TW prefix, this argument is not supported by the unambiguous language of the agreement which required appellant to make further inquiries only when payments neither referenced invoice numbers on the check nor contained accompanying documentation referencing the invoice number. Since it is uncontroverted that all payments from Cox received by appellant were accompanied by some documentation referencing an invoice number, this provision of the agreement was never activated.

Therefore, because a question of fact exists whether the action taken by appellant pursuant to the agreement proximately caused appellee's loss, the trial court erred by granting partial summary judgment to appellee on Count V. OCGA § 9-11-56; see *Superior Rigging &c. Co. v. Ralston Purina Co.*, 172 Ga. App. 79, 81 (322 SE2d 95) (1984).

2. Appellant's other enumerations of error as to the trial court's grant of partial summary judgment to appellee on Count V need not be reviewed in light of our holding in Division 1.

3. Appellant's counterclaim had been voluntarily dismissed prior to the hearing pursuant to OCGA § 9-11-41 (a) and (c), therefore,

there was nothing for the trial court to rule on; thus, the trial court erred by granting summary judgment to appellee on appellant's counterclaim.

*Judgment reversed. Birdsong, P. J., and Carley, J., concur.*

DECIDED OCTOBER 22, 1985 —
REHEARING DENIED NOVEMBER 5, 1985.

*Peter J. Anderson, R. Harold Meeks, Jr.,* for appellant.
*E. Kendrick Smith,* for appellee.